**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 17-cv-01158-DDD-SKC

**GUNNAR NITZKORSKI, STEPHEN PERNICE and JAY GROSS**, in his individual capacity and on behalf of others similarly situated,

    Plaintiff(s)

vs.

**COLUMBINE EMERGENCY MEDICAL SERVICES, INC. d/b/a COLUMBINE AMBULANCE SERVICE, COLUMBINE OXYGEN SERVICE, INC. d/b/a COLUMBINE OXYGEN AND MEDICAL, and VINCENT CISSELL**, an individual,

    Defendants.

_____

**DEFENDANTS' RESPONSE TO**
**PLAINTIFF'S MOTION IN LIMINE**
_____

    Defendants hereby files its RESPONSE to Plaintiff's Motion in Limine of November 11, 2019 as follows:

A.    Motions of this nature are not favored by the Courts in this District.  U.S. District Court Judge Daniel D. Domenico's Practice Standards, IV. B states in relevant part:" Motions in limine are discouraged when the motion cannot be resolved until evidence is presented at trial….." Defendants mirror Judge Domenico's practice standard in this regard and upon which it requests Plaintiff's Motion in Limine be denied, in totality.

B.    Plaintiff's Motion in Limine is an attempt to instruct Defendants how to present their defense down to restricting what specific words and references it does not want to be utilized in

the trial of this matter. Plaintiff certainly cannot control all of the witnesses – Defendants and Plaintiffs – as to what utterances they will make when on the witness stand. Furthermore, to try and restrict Defendants' ability to defend itself and present whatever evidence is relevant and necessary with a Motion of this nature is improper and prejudicial. Plaintiff's Motion in Limine should be denied.

**1.      USE OF TERMINOLOGY**

The Court in its Order of December 7, 2018, (Dkt#68) mirrored the terms used by both Plaintiff and Defendant in their respective Motions for Summary Judgment (Dkt #s 38 and 39), i.e." "down time", "lunch time", "break time", " meal times", "sleep times" "required to be ready to respond when calls came in". Similarly, these terms are related to Defendant's affirmative defenses and were repeatedly used by Defendant Vincent Cissell during his deposition of May 2, 2018. Requesting the Court prohibit such terms which have been repeatedly referenced, including in briefs and part of Defendant's defenses in this matter is not only unreasonable, but no party could ensure that a witness during this trial would not reference the same, while on the stand. This request for such restriction would severely prejudice Defendants presentation of defending the allegations they face by Plaintiff.

**II.     THE WORD "OVERTIME":**

Plaintiffs' claims against Defendants in this matter are FLSA claim, the statute of which is based upon violations of not paying "overtime". It is therefore, outrageous to even consider **not** using this term during testimony at trial when this is the very damage claim upon which Plaintiff is filed its lawsuit.

**III.     PLAINTIFF'S FAILURE TO COMPLAIN ABOUT NO OVERTIME PAY.**

The facts in this case show that Plaintiffs were paid for all the work that they did. They never complained about the checks that they received and cashed them. There was no problems with any Plaintiffs' paychecks received, until Mr. Nitzkorski contacted his undersigned counsel's office, who counseled him on a possible FLSA lawsuit against the Defendants in this matter. Nitzkorski talked to some of the opt-in Plaintiffs, informing them of the basis of this lawsuit and how now their paychecks may have been insufficient. This lawsuit is all about revenge against Mr. Nitzkorski for Vince Cissell terminating his employment.

**IV.     OPT IN PROCESS:**

Plaintiffs' filed this FLSA collection action, the Opt-In Notice of which is a public filing with the Court *(Dkt #18-1)* and which was sent to 25 potential opt-in Plaintiffs pursuant to the Court's Order *(Dkt #20),* repeatedly referencing this term. Plaintiffs in their Motion for Certification of Rule 23 Class *(Dkt #40)* again, repeatedly references not only the process and term "opt-in" and attempts to define the potential opt-in class numbers on *pg 2 of Dkt #40*.

Furthermore, testimony by Mr. Nitzorski indicated, that after he filed this lawsuit, and obtained the contact information from Defendants' employee list, he contacted some of those employees to see if they wanted to join this lawsuit as part of his "class". *(Nitzkorski depo pgs. attached)*

**V.     ATTORNEY-CLIENT RELATIONSHIP:**

Mr. Nitzkorski encouraged potential opt-in Plaintiffs, whom he called to contact about this lawsuit, to contact his attorney Alex Gastman, *(Nitzkorski depo p. 58).* To the extent that relationship was discussed with all of these potential opt-in Plaintiffs, outside the presence of the

3

attorney-client relationship privilege that could be asserted because Mr. Gastman was not present, then those discussions may be admissible at trial of this matter and therefore could not be precluded in a Motion in Limine request, which is premature at this time.

### VI.     ATTORNEY FEES AND COSTS OF LITIGATION:

Pursuant to D.C. COLO. LCivR 54.1 and 54.3 the determination of awarded attorney fees and costs of litigation is decided by the Court based upon the verdict that is reached by the jury in this case. It is not an issue before or during the trial of this matter.

### VII.    CRIMINAL HISTORY

A witnesses' credibility is key as to whether their testimony is to believed by the jury when they hear it during trial. Especially when any criminal history would have affected their ability to gain employment with Defendant. Furthermore, their "truthfulness" to accurately reporting the hours that they worked on the schedule sheets, again, would be directly relevant to Defendants asserting their defenses in this matter.

### VIII.   DISCIPLINE AND TERMINATION:

Again, the performance of the employee is directly relevant to the hours and job duties they performed in this case and whether or not he/she would be entitled to overtime based upon the hours worked. Just because Plaintiff manually wrote down on the time sheet the hours he claimed he worked on a particular date, does not immediately substantiate that he actually performed the job duties required of his job position during that shift. Therefore, again, Defendants are entitled to present evidence which would minimize any alleged damages that Plaintiffs would be claiming in this matter against them.  Whether or not Plaintiffs were "on call" during the entire time of their work shift is a disputed fact which will go to the jury to

decide.  The reasons for why they were terminated, when they relate to their failure to perform the job duties and responsibilities within the shift period for which they were paid, again goes directly to proving and substantiating Defendants defenses in this case.  The factual dispute is one that should go to the jury to decide, in unfettered, unrestricted form as suggested in Plaintiff's Motion in Limine.

**IX.    SEQUESTRATION ORDER:**

No objection.

Respectfully submitted this 21st, November 2019.

                                              LAW OFFICE OF RALPH G. TORRES
                                              _/s Ralph G. Torres_____
                                              Ralph G. Torres
                                              1801 Broadway, Suite 1100
                                              Denver, Colorado 80202
                                              Phone: (303) 297-8427; Fax: 303-292-2661
                                              *Attorney for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of November, 2019, I electronically filed the foregoing with the Clerk of the Court utilizing the CM/ECF system which will send notification of such filing to the follow e-mail addresses:

Penn A. Dodson
ANDERSONDODSON, P.C.
11 Broadway, Suite 615
New York, NY  10004
Email: penn@andersondodson.com

                                              /s Deborah Elmore, paralegal